Filed 2/17/26  Kanji v. Gryga CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| GHALIB KANJI,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>    v.<br><br>JOHN MARCEL GRYGA,<br><br>    Defendant and Respondent;<br><br>MELBA B. QUEZON,<br><br>    Defendant, Cross-complainant and Respondent. | B344439<br><br>Los Angeles County<br>Super. Ct. No.<br>21SMCV00970 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine W. Mandel, Judge.  Affirmed with corrections and remanded with directions.

Law Offices of Richard A. Marcus and Richard A. Marcus for Plaintiff, Cross-defendant and Appellant.

Snyder Law Firm, Ryan J. Snyder and Brad A. Snyder for Defendants, Cross-complainant and Respondents.

Ghalib Kanji appeals from a judgment entered against him on his complaint against John Marcel Gryga, and on the cross-complaint of Melba B. Quezon—Gryga's assignee. Kanji, who had signed a deed of trust on his property in 2003 to secure a loan from Gryga, claimed Gryga forged his signature on promissory notes and a second deed of trust for amounts Kanji had not borrowed, and that he had repaid Gryga more than what he owed on the first loan. Quezon, to whom Gryga had assigned the second deed of trust, asked the court to determine "the balance due on" and "[her] rights in" the second deed of trust. After a six-day bench trial, the trial court found (1) Kanji had not met his burden to establish the promissory notes and deed of trust were fraudulent, and (2) Kanji owed Quezon $215,553.44.

Kanji contends the trial court erred in finding he owed anything on the deed of trust—as it could not serve as the basis for the underlying debt; the second deed of trust was invalid because it referred to the underlying promissory note as being "of even date," but the deed of trust and promissory note were not signed on the same date; the promissory note was unenforceable because the statute of limitations had run; and the evidence did not support the court's finding that Kanji owed $215,553.44 because the court had found it could not make an accounting calculation to conclude any specific amount was "due and owing" to Gryga.

We affirm the judgment with corrections.

## FACTS AND PROCEDURAL BACKGROUND[1]

### 1. *Background*

Kanji and Gryga had been long-time neighbors and had a history of business dealings with each other. Gryga is a licensed real estate broker. Kanji's wife Marianne worked with Gryga in his realty company. Quezon has been Gryga's life partner since 2003.

Gryga loaned Kanji money over a period of years, beginning in 1995. He also loaned money, on Kanji's behalf, to Kanji's relatives. On January 16, 2003, Kanji signed a deed of trust (first deed of trust or 2003 deed of trust) on residential rental property he owned (the Mendenhall property) to secure an $81,000 loan from Gryga. The promissory note for the $81,000 loan also was dated and signed on January 16, 2003. Kanji had borrowed the $81,000 in 1997, however. The first deed of trust was recorded on June 4, 2004.

Kanji filed this action in May 2021. He filed the operative verified first amended complaint in November 2021. Kanji alleged that, when he was seeking to refinance the Mendenhall property in 2019, he discovered a second deed of trust encumbered the property. The second deed of trust—notarized on September 23, 2006 and recorded on September 29, 2006— secured a promissory note memorializing a $140,000 loan Gryga

---

[1] The parties did not have a court reporter for trial. Instead, they prepared, and filed with the court, joint daily reports generally summarizing each witness's testimony. The court found the reports "accurately reflect[ed] the substance of each witness' testimony." We summarize the facts in the light most favorable to defendants. (*Gyerman v. United States Lines Company* (1972) 7 Cal.3d 488, 492, fn. 1.)

made to Kanji.[2]  The promissory note was dated May 31, 2006 (5/31/06 note).  A second promissory note—dated November 16, 2006—increased the balance due on the 5/31/06 note from $140,000 to $230,000 (11/16/06 addendum).  Kanji alleged Gryga, or his notary, had forged his signatures on the documents.

Kanji alleged he met with Gryga about the documents in September 2019.  Gryga told Kanji his outstanding debt totaled $320,000.  Kanji was shocked and asked to see the original documentation for the debt.  Gryga showed him only photocopies.  He never provided the original documents.  Kanji sued Gryga for fraud and to cancel the promissory notes and second deed of trust, among other causes of action.[3]

In August 2023, Kanji named Quezon as a Doe defendant, and Quezon filed a cross-complaint against Kanji for declaratory relief.  Gryga had assigned his rights and interests in the 5/31/06 deed of trust to Quezon in an assignment of deed of trust recorded on October 25, 2010.[4]  Quezon alleged Gryga continued to loan money to Kanji after he signed the 2003 deed of trust.  By 2006, Kanji owed Gryga $140,000 and agreed to sign the 5/31/06 note for $140,000, secured by the 5/31/06 deed of trust.

---

[2]     Because the second deed of trust states it was "made" on May 31, 2006, we refer to it as "the 5/31/06 deed of trust."

[3]     Kanji also sued the notary who notarized his signature on the 5/31/06 deed of trust.  She defaulted.  Neither side could locate her to compel her to appear at trial.

[4]     In 2008, Quezon loaned Gryga $450,000.  Gryga was to make a partial payment on that loan from the alleged debt Kanji owed him.  In 2010, Quezon asked Gryga to seek repayment from Kanji—she believed he owed Gryga $230,000 at that time.

By November 2006, Kanji allegedly owed Gryga $230,000—due to further loan advances—and executed the 11/16/06 addendum confirming the increase in the balance on the 5/31/06 note. The cross-complaint alleged a controversy existed "concerning the amount due on the loans secured by" the 5/31/06 deed of trust. The prayer for relief asked the court "[f]or a judicial determination of the balance due on," and Quezon's "rights in," the 5/31/06 deed of trust.

## 2. *Trial and statement of decision*

In January 2024, the parties filed a jointly-prepared spreadsheet identifying 86 financial transactions at issue in the case—and the parties' positions on each—for the court "to use at the upcoming trial." Kanji agreed Gryga had loaned him $94,945.44; Gryga contended he had loaned Kanji $293,142.44. Gryga agreed Kanji had repaid $77,839 to Gryga, and thus owed $215,303, but Kanji contended he had repaid $202,704—$107,759 more than he borrowed.[5] The parties filed a joint witness list and joint exhibit list, and each side filed a trial brief. Kanji asked the court to order the first deed of trust canceled and reconveyed, order Gryga to refund to Kanji his overpayment on the $94,945 he borrowed, find the 5/31/06 deed of trust and related notes were forgeries, and order the cancelation of those instruments. Quezon asked the court to find Kanji owed her $215,303 plus interest.

---

[5]    The parties submitted their joint spreadsheet as trial exhibit 9. During trial, the parties submitted a revised version as exhibit 23. According to exhibit 23, Kanji claimed Gryga owed him $68,201.94, and defendants claimed Kanji's outstanding loan balance was $215,553.44.

5

The trial began on May 28, 2024. Kanji, Marianne, Gryga, and Quezon testified, as did the parties' handwriting experts and Kanji's banking practices expert.[6] Both sides rested on June 5; on June 14 they filed post-trial closing briefs.

The court issued its proposed statement of decision on August 6. The court found the testimony, and exhibits, established Gryga had loaned money to Kanji over a period of years—"well over 50 individual loans," according to Gryga's testimony and the entries in exhibit 23. The court noted Kanji acknowledged having borrowed $81,000 from Gryga. Kanji argued he paid back more than he borrowed, however. He argued Gryga owed outstanding commissions or referral fees (to Marianne or Kanji) that should have been allocated to the loan balance.[7] Kanji also argued that 27 payments Gryga had made to him were not loans but rent proceeds Gryga had collected on Kanji's behalf as the property manager for Kanji's Mendenhall property. The court found Gryga did not owe Marianne (or Kanji) any additional commissions or referral fees (beyond $6,589 Gryga agreed he owed), the alleged rental payments were loans to Kanji, and loans Gryga had made to Kanji's mother were the debt of Kanji.

---

[6]     Kanji's banking expert was a commercial loan officer. He "did not provide any accounting evidence regarding how much money was owed by either party."

[7]     Gryga testified he paid referral fees/commissions to Kanji and Marianne. He either credited them against Kanji's loan balance or paid them to Kanji, Marianne, or Kanji's mother, depending on what Kanji requested.

Kanji claimed Gryga—with the help of the missing notary —forged Kanji's signature on the 5/31/06 deed of trust and various promissory notes. The court found Kanji had failed to meet his burden to prove the documents were forged, and Gryga had "met his burden of proving the authenticity of the various deeds of trust and promissory notes that were notarized." In finding the documents at issue authentic, the court noted the experts' testimony conflicted but they agreed Kanji's signature "varied widely," which "was clearly evident to the court as well." The court had a "a low level of confidence (less than a preponderance) in the validity of" Kanji's expert's testimony. The court noted Gryga's expert testified Kanji made the questioned signatures. The court also noted the "strong presumption of regularity as to all notarized documents."

Gryga testified inconsistently about when and where the 5/31/06 $140,000 promissory note and deed of trust were signed. The court acknowledged the discrepancies in Gryga's testimony but noted Kanji provided no evidence about any of the questioned documents, or how they "came to be notarized with signatures that admittedly looked like his, even according to his own testimony and that of his handwriting expert." It also was "clear to the court" that Gryga could not have forged Kanji's signatures. He had a hand tremor that made his signature " 'shaky.' "

The court found Gryga "[met] his burden of showing the parties engaged in [a] lengthy pattern wherein Gryga loaned various sums to Kanji," the 5/31/06 deed of trust for $140,000 "seem[ed] to reflect the parties' agreement that the loan total as of that date was approximately $140,000," and the parties intended the 11/16/06 addendum "to be a continuation of the prior promissory note." The court found the 2003 note for

7

$81,000, and another $81,000 note dated August 13, 2005, were unenforceable on a breach of contract claim—the statute of limitations had expired—but the underlying loans were enforceable as secured by the 5/31/06 deed of trust. The court found the 5/31/06 promissory note was "enforceable for the same reasons."

Gryga testified about various loans he made to Kanji, as reflected on exhibit 23. The court found Gryga "produced voluminous cancelled checks and bank statements as evidence of loans made and deposited over the years." The court noted the parties did not "provide[ ] accounting testimony," and the court couldn't make its own accounting calculations to determine "any specific amount" due. But the court found Gryga's testimony about the loans he made to Kanji was "more convincing than that of Kanji."

The court found Kanji failed to meet his burden of proof on any of his claims—primarily because he failed to show the documents in question were forged. On Quezon's cross-complaint, the court noted she sought "a determination of the amount owed." The court found "Quezon met her burden of proof, and Kanji owes $215,553.44."

### 3. *Objections to statement of decision and entry of judgment*

The parties filed objections to the proposed statement of decision. Kanji objected that the proposed decision failed to recognize the 5/31/06 note had expired and was unenforceable— the only right remaining was the right to non-judicial power of sale; the 5/31/06 deed of trust was invalid because it was not of even date with the promissory note; and the court—which had stated there was no accounting testimony—could not find "there

8

was not enough evidence of what was due and owing to Gryga . . . and then find [$215,553.44] is actually due and owing." Quezon asked for confirmation that Kanji owed Quezon "7% interest from May 31, 2009 to the date of payment." The court rejected the parties' objections and adopted its proposed statement of decision as its final statement of decision.

The court ordered defendants to prepare a proposed judgment. The parties could not agree on the issue of interest and each side submitted a proposed judgment. The court adopted Kanji's version. On December 20, 2024, the court entered judgment as follows: "1. Ghalib Kanji shall take nothing on his First Amended Complaint. [¶] 2. Ghalib Kanji owes Melba B. Quezon $215,553.44." Kanji timely appealed.

## DISCUSSION

### 1. *Standards of review*

On appeal from a judgment based on a statement of decision following a bench trial, we review the court's conclusions of law de novo and its findings of fact for substantial evidence. (*Gajanan Inc. v. City and County of San Francisco* (2022) 77 Cal.App.5th 780, 791–792; see also *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94 (*Marriage of Ciprari*) [" 'The substantial evidence standard applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial.' "].) Under the substantial evidence standard of review, we " ' "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact

9

are liberally construed to support the judgment.' " (*Marriage of Ciprari*, at p. 94.)

If the statement of decision states the factual and legal basis for the decision, we will resolve any conflict in the evidence or reasonable inferences to be drawn from the facts in support of the trial court's decision. (*Marriage of Ciprari, supra*, 32 Cal.App.5th at p. 94.) Nevertheless, "[a] party may avoid implied findings in favor of a judgment, and preserve perceived error in a statement of decision, by making specific objections to the statement of decision." (*Ibid.*; Code Civ. Proc., § 634 [where a party brings omissions or ambiguities in a statement of decision to the attention of the trial court, appellate court "shall not . . . infer[ ] . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue"].)

2.      ***The judgment enables Quezon only to exercise the power of sale under the deed of trust for $215,553.44***

" '[D]eeds of trust, except for the passage of title for the purpose of the trust, are practically and substantially only mortgages with a power of sale . . . .' [Citation.] In practical effect, if not in legal parlance, a deed of trust is a lien on the property." (*Monterey S.P. Partnership v. W.L. Bangham, Inc.* (1989) 49 Cal.3d 454, 460; see also *Agam v. Gavra* (2015) 236 Cal.App.4th 91, 98, fn. 2 [a deed of trust "is a security instrument that entitles the lender on a real property loan to reach some asset of the debtor if the note is not paid"].) "[W]e note the following established principles: that a deed of trust is a mere incident of the debt it secures and that an assignment of the debt 'carries with it the security[ ]' [citations]; that a deed of trust is inseparable from the debt and always abides with the debt, and it has no market or ascertainable value, apart from the obligation

10

it secures [citations]; and that a deed of trust has no assignable quality independent of the debt, it may not be assigned or transferred apart from the debt, and an attempt to assign the deed of trust without a transfer of the debt is without effect." (*Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 553–554.)

a. *The amount secured by the deed of trust is the amount the court found Kanji owes*

The judgment states Kanji owes Quezon $215,553.44. Kanji argues that, because a deed of trust is nothing more than a lien, he cannot owe Quezon any sum under the 5/31/06 deed of trust. While that is technically accurate, the assignment of deed of trust to Quezon states Gryga is assigning the 5/31/06 deed of trust "together with the note or notes as therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue." Accordingly, the judgment is not incorrect in stating Kanji owes Quezon—as Gryga's assignee of the deed of trust *and the note(s) it secured*— $215,553.44. Moreover, defendants agree the judgment is not a monetary judgment against Kanji. Rather, the judgment reflects the outstanding amount the court found Kanji owes on the loan principal secured by the 5/31/06 deed of trust. Indeed, defendants concede Quezon's ability to recover the $215,553 from Kanji is limited to her right to exercise her power of sale to reach the Mendenhall property to satisfy the debt through a nonjudicial foreclosure.

That this was the court's intent is clear. In a November 17, 2022 pretrial ruling on the statute of limitations, the court determined that, although Gryga could not recover the principal or interest on the loans underlying the 5/31/06 deed of trust

11

through a breach of contract action, the power of sale under the deed of trust had not expired.  Moreover, in its minute order adopting Kanji's proposed judgment over Gryga's proposed judgment, the court explained, "Gryga cross-complained for declaratory relief, seeking determination of *how much Kanji owed based upon these loans*.  At trial 8/6/24[,] the court ruled against plaintiff and found defendant was owed $215,553.44."  (Italics added.)  True, the cross-complaint's prayer erroneously asked the court to determine "the balance due on" the 5/31/06 deed of trust.  The judgment's recitals in turn repeated this inaccuracy, stating Quezon filed a cross-complaint "seeking a court determination on the amount that is currently owed on the deed of trust."  The body of the cross-complaint, however, properly stated the issue, alleging a controversy existed "concerning the amount *due on the loans secured by* Deed of Trust #2."  (Italics added.)

Accordingly, we reject Kanji's contention that the judgment on the cross-complaint should have been that Kanji owed Quezon nothing.  We also conclude the judgment, as written, does not prejudice Kanji.  Critically, the judgment does not order Kanji to pay Quezon $215,553 or authorize Quezon to recover $215,553 from him.  Nor does the judgment declare Quezon is owed $215,553 under the deed of trust.  The judgment simply states the amount that the court found Kanji owed—in other words, the amount Quezon could recover from the proceeds of a nonjudicial foreclosure sale under the deed of trust, should she pursue such a sale.

Nevertheless, to make the court's intended judgment —and the cross-complaint's true request for relief—clear, we will remand the matter to the trial court to enter a corrected judgment that states the cross-complaint sought a determination

12

on the amount that is currently owed on the loans secured by the deed of trust, and declares Kanji owes $215,553.44 on those loans.

   b. *The trial court correctly found the 60-year statute of limitations applied to the deed of trust*

  Under Code of Civil Procedure, section 882.020, subdivision (a), the power of sale in a deed of trust is enforceable within 60 years of its recording date if the maturity date of the underlying note is not recorded, as was the case here.  (Code. Civ. Proc., § 882.020, subd. (a)(1), (2) [lien of a deed of trust expires, and is not enforceable by a power of sale, 10 years after "the final maturity date . . . for payment of the debt" if that date is "ascertainable from the recorded evidence of indebtedness" or 60 years after the deed of trust's recordation if the final maturity date "is not ascertainable from the recorded evidence of indebtedness"]; *Nicolopulos v. Superior Court* (2003) 106 Cal.App.4th 304, 310 (*Nicolopulos*) [maturity date of note is "not ascertainable from the record" where recorded deed of trust does not state the maturity date and no evidence indicates the note itself was recorded]; *Trenk v. Soheili* (2020) 58 Cal.App.5th 1033, 1043–1044 ["There is no ambiguity in this statutory requirement that a document stating the last date for payment of the underlying obligation must be *recorded* for the 10-year period to apply.  The requirement does not make any exception when there is actual knowledge of that date by the party that is exercising a power of sale."].)  Accordingly, the court properly ruled in its November 17, 2022 pretrial ruling that the power of sale under the second deed of trust had not expired.

  Moreover, the running of the statute of limitations on the underlying promissory note "does not extinguish a power of sale

conferred on a trustee by a deed of trust.  That is, while a civil action to foreclose a deed of trust may be barred under section 2911 [of the Civil Code], nonjudicial foreclosure proceedings under a power of sale are not." (*Nicolopulos, supra*, 106 Cal.App.4th at p. 309.)  On appeal, Kanji argues the court erred in finding the 5/31/06 note enforceable because the statute of limitations under Code of Civil Procedure section 337 and Commercial Code section 3118 had expired.  (Code Civ. Proc., § 337, subd. (a) [action on contract or obligation "founded upon an instrument in writing" must be brought within four years of its accrual]; Cal. U. Com. Code, § 3118, subd. (a) [action "to enforce obligation of a party to pay a note payable at a definite time" must be brought within six years after the note's due date].)

Kanji misconstrues the court's decision.  First, in its November 2022 pretrial ruling, the court ruled the four-year statute of limitations on the 2003 and 2006 promissory notes had expired, "so Gryga cannot recover the principal or interest on either underlying loan via a breach of contract action," but "the power of sale under the deed of trust has not expired."  In its statement of decision, the court explained the 2003 and 2005 notes for $81,000 were unenforceable on a breach of contract claim, "but the loans underlying the [notes] are enforceable as secured by the 5/31/06 [deed of trust]."  The court went on to explain the deed of trust "is enforceable, as Kanji failed to meet his burden of proving the document was forged.  As detailed above, the preponderance of the evidence is that the signature is genuine.  Likewise, the [note] of 5/31/06 for $140,000 (exh. 3) is enforceable for the same reasons."  Considering the court's pretrial ruling on the statute of limitations together with its

14

statement of decision, we read the court's statement as finding the 5/31/06 note—like the deed of trust—was not forged, and the debt underlying the note thus was recoverable through a non-judicial foreclosure on the deed of trust. Nowhere did the court state the note was enforceable through a breach of contract action. In any event, the judgment, as we discussed, does not award Kanji a monetary judgment on the note or on the deed of trust. The court did not err in finding the 60-year statute of limitations applied.

3. ***The court did not err in finding the 5/31/06 deed of trust was valid and secured Kanji's total loan balance***

At trial, Kanji primarily challenged the validity of the 5/31/06 deed of trust and underlying promissory notes as forged. After finding Gryga's testimony and expert evidence more credible than Kanji's, the court concluded Kanji's signatures were genuine. On appeal, Kanji does not challenge the court's finding that the documents were authentic. Rather, as he also argued at trial, Kanji contends the 5/31/06 deed of trust is unenforceable because it does not clearly identify the debt it secures.

    a.    *Contract interpretation and standards of review*

We apply general rules of contract interpretation when interpreting a deed of trust. (*Thoryk v. San Diego Gas & Electric Co.* (2014) 225 Cal.App.4th 386, 397.) "A note and a deed of trust, although two instruments, form parts of one transaction and must be read and construed together." (*Kerivan v. Title Ins. & Trust Co.* (1983) 147 Cal.App.3d 225, 230.)

Generally, interpretation of a contract is a judicial function. (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125.) Our goal in interpreting a contract is to "give effect

15

to the mutual intention of the parties as it existed at the time of contracting."  (Civ. Code, § 1636.)  "Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms."  (*Wolf*, at p. 1126; Civ. Code, § 1639 ["[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible"].)  Courts may consider extrinsic evidence even where the terms of a contract appear clear and unambiguous, however, if it is relevant to prove the language is "reasonably susceptible" to another meaning.  (*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & R. Co.* (1968) 69 Cal.2d 33, 37.)  "A party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms may reveal what the parties understood and intended those terms to mean." (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393; Civ. Code, § 1647 ["A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."].)  Moreover, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."  (Civ. Code, § 1642.)

When no extrinsic evidence is introduced or the evidence is not in conflict, we independently construe the contract. (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.)  When "extrinsic evidence is in conflict, and thus requires resolution of credibility issues," we will uphold "any reasonable construction . . . if it is supported by substantial evidence." (*Id*. at p. 956.)

b.   *Substantial evidence supported the court's finding that the parties' agreements were part of one transaction*

In determining the 5/31/06 deed of trust secured Kanji's loan balance, the trial court construed the deed of trust and promissory notes as one transaction under Civil Code section 1642.  Accordingly, we first consider whether substantial evidence supported that construction.

"The rule that separate written documents between the same parties and relating to the same subject-matter as indicated by the language contained therein, or satisfactorily proved by the circumstances under which they were executed, are to be construed together as one transaction, has been determined by so many authorities there is no room for controversy regarding that principle." (*Lynch v. Bank of America Nat. Trust & Savings Ass'n* (1934) 2 Cal.App.2d 214, 223.)  "This rule applies even though the separate written instruments were not executed on the same date." (*Ibid.*; see also *Nevin v. Salk* (1975) 45 Cal.App.3d 331, 338 (*Nevin*) ["documents need not be executed contemporaneously" to be part of one transaction].)  "[I]t is a question of fact as to whether several writings comprise one transaction." (*Nevin*, at p. 338.)

The court found the testimony and documentary evidence established Gryga loaned Kanji "various sums" of money over a period of years.  The evidence showed the parties engaged in a practice where Gryga would advance money to Kanji and add the advances to a running balance of the total amount Kanji owed.  For example, a copy of the 1/16/03 $81,000 promissory note with a notation in Gryga's handwriting—dated May 23, 2005 and signed by Kanji—shows the parties treated Gryga's loans

17

to Kanji as one continuous transaction.  The handwritten note states:  "Since January 16, 2003, additional advances have been given to Ghalib Kanji and some payments have been received . . . .  Current loan balance [plus accrued interest is] approx[.] . . . $150,000."  Another promissory note for $81,000—but dated and signed by Kanji on August 13, 2005—similarly states:  "Initial $81,000 note is an estimate and to be increased to reflect correct running balance on spreadsheet dated 8-13-05."

Gryga also testified he mistakenly reconveyed the 2003 $81,000 first deed of trust.  (The reconveyance was recorded on August 24, 2005.)  The evidence showed Gryga nevertheless continued to loan money to Kanji.  He testified he had Kanji sign a new promissory note for $140,000 and a new deed of trust.  The 5/31/06 note for $140,000 continued the parties' earlier practice, stating its balance will be "increased" if "additional advances are made to" the borrower (Kanji).  Finally, the ledger attached to the $230,000 11/16/06 addendum note is a "[r]unning [b]alance" of the transactions between Kanji and Gryga from 1997 to November 2006, including advances, interest, payments, and referral fee credits.  Gryga also testified Kanji had a running balance, explaining an $11,000 payment Kanji had made on May 11, 1999—reflected in exhibit 23—applied to the loan balance as a whole.  Accordingly, substantial evidence supported the court's construction of the deeds of trust and promissory notes as one transaction.  (See *Nevin, supra,* 45 Cal.App.3d at p. 338 ["note, mortgage and agreement of sale constitute one contract where they are part of the same transaction"]; *Meier v. Paul X. Smith Corp.* (1962) 205 Cal.App.2d 207, 217–218 [trial court properly concluded six differently-dated letters regarding the

18

purchase and sale of certain machinery "were written as parts of one transaction and should therefore be considered together"].)

      c.     *The documents here could be "of even date" without having the same signature date*

Kanji argues the deed of trust is invalid because it does not describe a promissory note "of even date" with it. The 5/31/06 deed of trust—a form agreement that Gryga filled in with a typewriter—states it secures, in part:

> "Performance of the indebtedness evidenced by one promissory note in the principal sum of $140,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor [Kanji], payable to order of Beneficiary [Gryga], and extensions or renewals thereof . . . ."

Kanji argues that, because the 5/31/06 note was not signed on the same date as the deed of trust, it is not "of even date herewith," and thus the deed of trust "could not be used to secure the indebtedness of <u>that</u> promissory note."

The deed of trust and the $140,000 promissory note have different signature dates: Kanji's signature on the deed of trust was notarized on September 23, 2006, and he signed the $140,000 promissory note on July 23, 2006.[8] But each document is *dated* May 31, 2006. The deed of trust begins, "By this deed of trust,

---

[8]     Kanji signed another version of the 5/31/06 promissory note on May 31, 2006. The differences between the two versions are immaterial to this appeal, as Quezon cannot enforce the promissory note itself. Both bear a May 31, 2006 date and state Kanji promises to pay Gryga $140,000. We presume the note signed on July 23, 2006, superseded the note signed on May 31, 2006.

19

made this May 31, 2006 . . . ."  The face of the $140,000 promissory note also bears the date of May 31, 2006—above the first paragraph of text—as follows:

"Promissory Note
$140,000

May 31, 2006                                    Simi Valley, California"

We thus disagree with Kanji's apparent contention that the 5/31/06 note is not "of even date" with the deed of trust as a matter of law.  "Even date" simply means the "same date." (See Black's Law Dict. (12th ed. 2024) ["This jargonistic phrase is sometimes used in one instrument to refer to another instrument with the same date, esp. when both relate to the same transaction (as a deed and a mortgage)."].)  We have found no authority suggesting that when a promissory note is dated the same date as the date the deed of trust states it was made, but is signed on a different date, it is not "of even date" with the deed of trust.  If anything, construing documents that are part of the same transaction—as was the case here—and bear the same date as "of even date" with each other is more reasonable than construing the documents to be "dated" on the date they were signed.  (See *Sequeira v. Lincoln National Life Ins. Co.* (2015) 239 Cal.App.4th 1438, 1445 [reviewing court avoids contractual interpretations that "create absurd or unreasonable results"].)

Kanji relies on out-of-state cases and a California trial court decision.  As Gryga notes, the out-of-state authorities are inapposite, involving situations where the deed of trust was unenforceable due to errors with the notarization, signatures, or identification of the underlying debtor, and where the issue was the lack of constructive notice to a third party.  (See, e.g., *Matter of Enderle* (1993) 110 N.C.App. 773, 775 [431 S.E.2d 549, 550]

20

[deed of trust executed to secure third party's debt was invalid where it identified executors of deed of trust instead of third party as having made the underlying note]; *In re Buchholz* (Bankr. D.N.J. 1998) 224 B.R. 13, 20–22 [mortgage invalid where notary acknowledged debtor's signature outside his presence]; *Coco v. Ranalletta* (2001) 189 Misc.2d 535, 536, 538, 541 [733 N.Y.S.2d 849, 850, 852, 854] [first mortgage with name of debtor misspelled failed to provide constructive notice as it was recorded outside the chain of title and thus second mortgage had priority over it]; *Monnie v. Field (In re Bross)* (S.D. Ohio, Aug. 16, 2006, No. C-1-06-172) 2006 U.S. Dist. Lexis 57449, at **11–14 [debtor's initialing of each page of a mortgage, while leaving signature line blank, did not demonstrate her intent to be bound by mortgage rendering it voidable].) None is binding on this court.

The sole California case Kanji cites, *Norlund v. Norlund* (Cal.Super.Ct., Jan. 19, 2022, No. 21CV02257) 2022 Cal. Super. Lexis 91739—a decision from the Butte County Superior Court —also is inapposite (and nonbinding). The trial court there sustained with leave to amend a demurrer on a complaint for fraud against a title company that had recorded a deed of trust the trustor allegedly altered "so that it no longer secured" the underlying promissory note. (*Id.* at **1–2.) In granting leave to amend, the court acknowledged the plaintiff's representation "that the deed of trust does not in fact secure the promissory note because the deed of trust was executed on November 29, 2019 and provides 'Payment of the indebtedness evidenced by one promissory note of even date herewith,' however the date of the promissory note was May 1, 2019." (*Id.* at *2.) Nothing in the court's decision, however, indicated the deed of trust also stated it was made on the same date as the promissory note was dated,

21

as was the case here.  We do not read *Norlund* as interpreting California law to require documents to be signed on the same date to be of "even date."

Moreover, as Gryga notes, the court in *In re Willows II, LLC* (Bankr. E.D.N.C. 2013) 485 B.R. 528—distinguishing cases on which Kanji relied—rejected application of a "bright-line rule that would render invalid every deed of trust that references a note with a date different from the date of the note actually produced." (*Id.* at p. 535.)  The court instead adopted a "fact-specific approach" where "courts 'look at the language of the documents and the facts of each case to determine if the information provided sufficiently describes the underlying obligation.' " (*Ibid.*)  There, the debtor argued a deed of trust was unenforceable because it referred to a note dated September 7, 2005, when the note's date was September 8, 2005.  (*Id.* at pp. 530–531.)  The court found the deed of trust sufficiently identified the obligation secured:  it identified the note's loan number, the parties to the note, and the amount owed on the note.  (*Id.* at p. 537.)  The incorrect date did "not threaten the 'clarity and certainty in lien perfection requirements' established by North Carolina courts."  (*Ibid.*)

Kanji also notes the trial court agreed with him "that certain documents were not signed on the same date ('even date'), as required."  As Kanji repeatedly has asserted, we consider legal questions de novo.  We thus are not bound by what Kanji construes as the court's determination that documents must be signed on the same date to be considered "of even date."

d.   *Substantial evidence supports finding the deed of trust secured the 5/31/06 note and future advances*

Although Kanji contends the court's interpretation of the deed of trust involved no factual determinations, he in fact is arguing the deed of trust is ambiguous—that it does not clearly refer to the 5/31/06 promissory note because "even date" could mean the date the deed of trust was made or the date it was signed.  We conclude any ambiguity caused by the deed of trust's reference to the promissory note as being "of even date" did not defeat its validity.  (See *D'Oyly v. Capp* (1893) 99 Cal. 153, 156 ["Where the mortgage is given in good faith to secure a present indebtedness and future advance, whether the true object be stated in the mortgage or not, it is valid as between the parties and as against any subsequent lienholder not prejudiced by the misstatement."].)  We also conclude the court properly considered extrinsic evidence to determine the parties intended the deed of trust to secure the $140,000 5/31/06 promissory note, as increased by the 11/16/06 addendum.  (See *W.P. Fuller & Co. v. McClure* (1920) 48 Cal.App. 185, 193 (*McClure*) ["As a general rule, the recitals of a written instrument as to the consideration are not conclusive, and it is competent to inquire into the consideration and show by parol what the real consideration was, provided the legal effect or operation of the instrument is not thereby altered or defeated.  It is not necessary to the validity of a mortgage that it should truly set forth the nature and character of the debt that it is intended to secure."].)

Even if the deed of trust incorrectly referred to the promissory note as of "even date," therefore, the documents themselves, Gryga's testimony—which the court credited— and other evidence all demonstrated the parties intended the

23

deed of trust to secure the 5/31/06 note. (See *Rogers v. Evans* (1934) 137 Cal.App. 538, 539, 541, 544–545 [deed of trust's misdescription of the note that "actually evidenc[ed]" underlying debt was not fatal where testimony and documents supported finding the beneficiary mistakenly described note in deed of trust and trustor intended deed of trust "to secure the payment" of the note actually executed and payable to the beneficiary].) Gryga testified he dated the documents; the court found Kanji executed both documents; the reconveyance of the $81,000 deed of trust meant a new deed of trust was required to secure Kanji's outstanding debt; and the court found the 5/31/06 deed of trust "seem[ed] to reflect the parties' agreement that the loan total as of that date was approximately $140,000, as Gryga testified."

In his objections to the proposed statement of decision, Kanji argued "[n]o deed of trust states that it secures '[$]215,553.44.' " He essentially objected to the court finding Quezon could reach "any amount more than [$]140,000 . . ., which is in excess of the amount expressed" in the 5/31/06 deed of trust. We conclude the court properly found the 5/31/06 deed of trust applied to the entirety of Kanji's loan balance.

First, the 5/31/06 deed of trust stated it secured the "[p]erformance of the indebtedness evidenced by one promissory note in the principal sum of $140,000.00 . . . according to the terms of [the 5/31/06 note] and extensions or renewals" of the note. The terms of the 5/31/06 note—that Kanji signed before he signed the deed of trust—expressly provided the note's "balance" would be "increased" by any "additional advances . . . made to borrower." When reading the deed of trust and the terms of the note together, the only reasonable conclusion is that the parties intended the deed of trust to secure increases

24

to the 5/31/06 note's balance. (See *McClure, supra,* 48 Cal.App. at pp. 193–194 ["it is permissible to show by parol that a mortgage, which upon its face appears to be for the payment of a specified sum of money, was in fact given as security for future optional advances"].)

Second, the court found "the preponderance of the evidence" established "the parties intended the 11/16/06 promissory note to be a continuation of the prior promissory note [referring to the 5/31/06 note]."[9] The court noted it was entitled " 'Addendum to Existing Promissory Note.' " Below that title, the 11/16/06 addendum states the "[b]alance to [d]ate" was "$230,000." The document expressly states, "The additional balance increase from original note dated May 31, 2006 is due to additional advances make by [*sic*] Ghalib Kanji (as indicated on attached running balance)." The court found that attached "ledger" "further evidence[d] . . . the parties' mutual acknowledgement and agreement that the transactions listed on the ledger were in fact loans that were outstanding." The ledger listed amounts due, and payments made, from January 1997 to November 2006. Moreover, Kanji stipulated he borrowed certain amounts from Gryga after May 31, 2006—in essence, acknowledging Gryga had made "additional advances" to him.

Kanji signed the addendum. We reasonably can conclude —as the court did—that Kanji agreed the ledger evidenced his loan balance had increased to $230,000. And based on the terms of the 5/31/06 note and deed of trust, we conclude the parties

---

9       The cross-complaint alleged the 11/16/06 addendum "was an extension of" the 5/31/06 note "and was therefore secured by" the 5/31/06 deed of trust because it "secured 'extensions' of" the 5/31/06 note.

25

intended and understood that this increased balance would be secured by the deed of trust to the same extent as the original $140,000 balance.

Moreover, "[a] lien may be created by contract, to take immediate effect, as security for the performance of obligations not then in existence." (Civ. Code, § 2884.) Thus, "a mortgage, made in good faith to cover future advancements or indorsements, is valid, not only as between the immediate parties to the instrument, but as against subsequent purchasers or encumbrancers, if properly recorded." (*Tapia v. Demartini* (1888) 77 Cal. 383, 386.) "If the mortgage discloses upon its face that it is to stand as security for future advancements, the amount of the advances to be made need not be set out. It is sufficiently definite to put subsequent encumbrancers on inquiry, and they must ascertain the extent of the lien, or suffer the consequences." (*Id.* at p. 387.)

The deed of trust did just that. It expressly stated it secured "[p]ayment of additional sums and interest . . . which may hereafter be loaned to Trustor [Kanji] . . . when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust." As Kanji notes, the 11/16/06 addendum does not refer to the 5/31/06 deed of trust. We do not find the omission fatal. If anything, given the 11/16/06 addendum was a continuation of the already-secured 5/31/06 note, a statement that it too was secured by the deed of trust would have been redundant. As the trial court found, the parties intended the $230,000 11/16/06 addendum to be a continuation of the 5/31/06 note—not a new and separate obligation. Construing the agreements together, because the deed of trust already secured the 5/31/06 note—and the note itself stated future

26

advances would increase its $140,000 balance—the parties reasonably would understand the deed of trust secured the increased balance of the note without expressly stating that fact in the addendum.

Finally, Kanji conclusorily asserts we must construe any ambiguity in the documents against Gryga as their drafter. Gryga testified he filled in the form deed of trust and prepared the promissory notes and ledger. Civil Code section 1654 provides: "In cases of uncertainty not removed by the preceding rules [of contract construction], the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." When reading the deed of trust, the 5/31/06 note, and the 11/16/06 addendum and ledger, and considering Gryga's testimony and Kanji's concession that he continued to borrow from Gryga after May 31, 2006, no uncertainty exists as to the parties' intent to have the 5/31/06 deed of trust secure the total amount Gryga loaned Kanji. Accordingly, we agree with defendants that it is unnecessary to construe the parties' agreements against Gryga. (See, e.g., *Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448 ["general rule that ambiguities in a form contract are resolved against the drafter" "is used when none of the canons of construction succeed in dispelling the uncertainty"].)

4.      *Substantial evidence supports the court's finding that Kanji owed $215,553.44 on the outstanding loan balance*

Kanji contends substantial evidence did not support the court's finding that he owed Quezon $215,553.44, because the court found the evidence was insufficient to determine any

specific amount was owed.  Kanji is referring to this paragraph from the court's statement of decision:

> "Neither party provided accounting testimony. The court cannot conclude any specific amount is due and owing to Gryga, as the testimony kept changing throughout the trial, and the court cannot make accounting calculations on its own, without testimony.  It is impossible for this court to review the ledger sheet and determine what amount was due, the date it was due, and the date from which interest would be due."

Kanji also quoted this paragraph in his objections to the court's proposed statement of decision.  He objected to the court's findings as "inconsistent and contradictory," arguing the court could not "find both that there was not enough evidence of what was due and owing to Gryga, and by extension to Quezon, and then find that some amount is actually due and owing."

We find no contradiction or inconsistency when reading the above paragraph in context with the rest of the court's statement of decision.  We do not read the court's statement as a finding that Quezon failed to meet her burden of proof as to the amount Kanji owed Gryga.  Rather, we can infer from the evidence presented—and the court's findings in its statement of decision—that the court was discussing its inability to perform accounting calculations for each individual loan and payment made during the years-long course of the parties' borrowing history, reflected in the running ledger attached to the 11/16/06 addendum.  (For example, as discussed, Gryga testified a payment Kanji had made would have been applied to the running balance rather than to a particular loan amount.)

28

A discussion about the demonstrative exhibits the parties jointly prepared provides some context. The parties' testimony and evidence about what Kanji owed centered on 86 financial transactions the parties identified before trial—alleged payments from Gryga to Kanji and alleged credits to Kanji's loan balance— that spanned from September 1995 to September 2007. The parties jointly prepared a spreadsheet for the court to use at trial that identified each of these transactions, each side's position as to the nature of the payment or credit, and those transactions about which the parties agreed. The parties jointly filed the spreadsheet before trial; they then introduced the spreadsheet at trial as exhibit 9. During the trial—because Kanji had testified differently[10] about some of those transactions—the parties revised the spreadsheet and jointly submitted it as exhibit 23 for the court's use.[11] The daily trial summaries refer to the parties' testimony about the transactions identified in exhibits 9 and 23 —as does the statement of decision—and the court made specific factual findings about the alleged payments and credits based on the parties' testimony and other documentary evidence.

Accordingly, we conclude that, when the court stated it could not "conclude any specific amount is due and owing to

---

[10] For example, the "Trial Day 2 Recap" states Kanji changed his testimony about credits owed to him for certain referrals resulting in a reduction of those credits on exhibits 9/23 from "a little over $52,000 . . . to a little over $3,000." He also testified he was owed more for other transactions than what was reflected on exhibit 9—and to what he had testified the day before—which amounts were updated on exhibit 23.

[11] The court accepted exhibits 9 and 23 "for demonstrative purposes only."

29

Gryga, as the testimony kept changing throughout the trial," the court was referring primarily to Kanji's changed testimony as to credits he was owed, resulting in the updated exhibit 23. (Gryga also testified to an error he had made.) We do not conclude, as Kanji suggests, that the court found there was no testimony supporting its finding that a preponderance of the evidence established Kanji owed Gryga *a total* of $215,553.44. Rather— after considering the testimony and evidence discussed below—the court found Quezon established Kanji owed that total amount. It is clear to us that the court adopted the accounting calculations defendants made on the 86 individual transactions[12] —reflected in exhibit 23—rather than make its own calculations without "accounting testimony." Moreover, as the court considered the many loans Gryga made to Kanji as one ongoing transaction, there was no need for the court to perform accounting calculations on—in defendants' words—"dozens of transactions" "given the complexity of the evidence and Kanji's testimony that was a . . . moving target." (See *Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1171 [" '[a] trial court is not required to make findings with regard to detailed evidentiary facts or to make minute findings as to individual items of evidence' "].)

In any event, substantial evidence supported the court's ultimate finding that Kanji owed $215,553.44 on the loans underlying the deed of trust. First, Gryga testified that all payments on exhibit 23 were loans to Kanji. "A single witness's testimony may constitute substantial evidence to support a finding." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) The court's decision specifically stated Gryga "testified to various

---

[12] The parties struck two of the 86 items.

30

loans he made to Kanji, as evidenced on exh[ibit] 23." The court found Gryga's testimony credible, while acknowledging it "was not perfect." The court found the inconsistencies in Gryga's testimony "seem[ed] more due to the lengthy history of the parties' interactions and the huge number of transactions, rather than a willful attempt to testify inaccurately or mislead the court."

Moreover, the court found "multiple bank[ ] account statements and checks" supported Gryga's testimony about the loans he made to Kanji. In contrast, Kanji "provided limited documentation regarding any alleged loans, payments or bank account statements." The court stated: "Much of [Gryga's] testimony was corroborated by copious records he produced, including bank statements and cancelled checks going back decades; this was in stark contrast to the dearth of documentary evidence provided by Kanji." Although the court acknowledged Gryga's documentation was "not complete," the court found that was "not unexpected regarding transactions from two decades ago." The court found Gryga's documentary evidence "superior to" and "vastly more comprehensive and compelling than that of Kanji."

In contrast, the court found Kanji's credibility "questionable." The court noted the amounts he claimed Gryga owed him "changed multiple times during the trial." The court found Kanji failed to meet his burden to demonstrate the 27 payments he received from Gryga between February 2004 and July 2005 were rents Gryga had collected for him while managing his Mendenhall property. The court found those payments—reflected in exhibit 23—were loans. Similarly, the court found Kanji had failed to meet his burden to prove "an offset" to any

31

amounts he owed Gryga based on referral fees or commissions he claimed Gryga owed him or Marianne, except for $6,589 that Gryga acknowledged he owed. Again, those claimed amounts were reflected in exhibit 23. The court noted any "disagreements over real estate commissions" were "long-barred by applicable statutes of limitations." Finally, the court believed Gryga's testimony—that Kanji asked him to make certain payments to Kanji's mother instead of to him—over Kanji's testimony that he was not responsible for loans Gryga made to Kanji's mother.

The court even addressed exhibit 23 specifically. The court noted many of the loans to Kanji listed in the exhibit included a date and check number, and many of those checks included a note in their "memo line" indicating they were loans. The court continued: "Absent specific evidence to the contrary from Kanji, the court finds the testimony of Gryga more convincing than that of Kanji."

Accordingly, we conclude Kanji failed to demonstrate the court erred in finding he owed $215,553.44 on the loans secured by the 5/31/06 deed of trust.

# DISPOSITION

We remand the matter and direct the trial court to correct the judgment by:  (1) inserting at page 2, line 10, the phrase "the loans secured by" after the word "owed on"; (2) revising paragraph 2 at page 2, line 25 to state "Ghalib Kanji owes $215,553.44 on the loans secured by the Deed of Trust, which has been assigned to Melba B. Quezon."  We affirm the judgment as corrected.

Respondents are to recover their costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.